UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ALFONZO TAYLOR,  :
                Plaintiff,  :
                  :
v.  :  **OPINION AND ORDER**
                  :
KEVIN CHERVERKO, LEANDRO DIAZ, DR.  :  15 CV 444 (VB)
RAUL ULLOA, and MICHAEL KELLY,  :
                Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Alfonzo Taylor, proceeding pro se and in forma pauperis, brings civil rights claims pursuant to 42 U.S.C. § 1983 and tort claims under New York law. Plaintiff alleges defendants Kevin Cheverko,[1] Leandro Diaz, Dr. Raul Ulloa, and Michael Kelly were deliberately indifferent to plaintiff's serious medical needs while he was incarcerated at the Westchester County Jail.

      Now pending is defendants' motion to dismiss pursuant to Rule 12(b)(6). (Doc. #15). Plaintiff has not filed any opposition to the motion.

      For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

I.    Factual Allegations

      In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor.

---

[1]    Defendant Cheverko is incorrectly sued herein as "Cherverko."

1

Plaintiff was an inmate at the Westchester County Jail starting on April 3, 2014. Defendants held positions at the jail while plaintiff was incarcerated: Cheverko was the Correction Commissioner, Diaz the Warden, Ulloa the Medical Director, and Kelly the Head of Medical Staff.

The injuries giving rise to plaintiff's alleged medical needs predate his incarceration.

On January 12, 2013, plaintiff was accidentally hit by a car. On February 20, 2013, an MRI revealed "a complete tear of [the] posterior horn of the medi[]al meniscus" in his right knee and "2.1 cm loose body in the upper portion of the joint," as well as the following cervical spine injuries: "C 3-4 Disc herniation, C 4-5 Disc Bulge, C 5-6 mild loss Disc space height with Disc herniation, mild loss of C 6-7 Disc space height with a posterior Disc herniation impingement on neural foramina." (Compl. ¶ 17). On February 27, 2013, another MRI revealed the following injuries to plaintiff's lumbar spine: "L1-2 Disc bulge, mild loss of L2-3 Disc space height with Disc herniation, L3-4 Disc bulge, L4-5 Disc bulge, posterior central L5-S1 Disc herniation." (Id. ¶ 18).

Plaintiff underwent arthroscopic surgery on his left knee on January 30, 2014. He was given a knee brace and cane to help his recovery.

The complaint does not indicate whether any injuries to plaintiff's right knee were diagnosed prior to his incarceration.

According to plaintiff, upon his arrival at the Westchester County Jail on April 3, 2014, he informed the medical staff he suffered from grand-mal seizures, asthma, left and right knee injuries, and the spinal injuries described above. At that time, he complained of severe pain, and

2

was prescribed Motrin.  On April 17, 2014, he provided the jail with all his medical records relating to his January 12, 2013, accident.

Over the next few months, plaintiff filed numerous "sick call slips" requesting attention from the medical staff due to his "severe pain," but the medical staff never saw him.  (Compl. ¶ 22).  Plaintiff does not specify whether this pain resulted from his knee injury or his back and spine injuries.  Plaintiff does not allege receiving any treatment from April to August 2014.

According to the complaint, from August through December 2014, plaintiff received medical attention on various occasions, relating either to his back and spine or to his right knee.  For clarity, the Court will discuss the attention given to each injury in turn.

    A.    <u>Back and Spine Injuries</u>

On August 11, 2014, plaintiff was examined by a doctor at the Westchester Medical Center ("WMC").  The doctor recommended cortisone shots for pain management and a follow-up visit with him.  Plaintiff alleges he never received the shots and no follow-up visit with this doctor was scheduled.

On September 15, 2014, plaintiff was again examined at WMC, apparently by a different doctor, relating to nerve damage in his neck and arms.  The doctor prescribed 300 mg of Neurontin for pain management.  Plaintiff alleges this medication "was ineffective and caused plaintiff stomach pain and dizziness."  (Compl. ¶ 24).

On October 14, 2014, plaintiff underwent "electrodiagnostic" testing at WMC, conducted by a different doctor than the one he saw in August.  (Compl. ¶ 25).  Plaintiff does not state whether follow-up was recommended but alleges there was none.

On December 15, 2014, plaintiff visited WMC to address lower back pain.  There, yet another doctor recommended physical therapy and an increase in his Neurontin dosage, to 600 mg.  This doctor also recommended a follow-up visit in three months.  Plaintiff does not indicate whether any of these recommendations were carried out.

On December 23, 2014, plaintiff visited the jail's medical facility, where a nurse named "Mari" gave him Flexerall for back pain and increased his Neurontin dosage to 600 mg.  (Compl. ¶ 32).

The complaint does not allege any particular consequences of this course of treatment, or indicate the current state of plaintiff's back and spine injuries.

    B.    <u>Right Knee Injury</u>

On November 25, 2014, plaintiff received an MRI on his right knee at Mount Vernon Montefiore Hospital.  Plaintiff alleges defendant Ulloa ordered this MRI.  The examination revealed a "tear of the posterior horn of medical meniscus with a para meniscal [sic] cyst" and "[t]ear of the anterior horn of the lateral meniscus."  (Compl. ¶ 27).

On December 1, 2014, plaintiff "repeatedly" filed sick call slips at the jail, because the pain in plaintiff's knee made it difficult for him to walk.  (Compl. ¶ 28).  These went unheeded by medical staff until plaintiff spoke to his cell block sergeant—after that, a doctor (not a party here) ordered plaintiff be given a cane to help him walk "because of the tears in his right knee."  (<u>Id</u>.).

On December 23, 2014, plaintiff visited the jail's medical facility where the jail's orthopedic surgeon told him he needed surgery to repair the torn meniscus in his right knee.  Plaintiff alleges there was "no follow-up done with [the] outside clinic concerning this matter

4

even after plaintiff repeatedly complain[ed] of pain in his right knee." (Compl. ¶ 31). The Court construes this allegation liberally as alleging no surgery ever took place.

Plaintiff alleges he has difficulty walking, his knee periodically "give[s] way," and he has to wear a knee brace, because he never received knee surgery. (Compl. ¶¶ 28, 36, 42). Plaintiff also claims the lack of surgery may lead to a larger meniscus tear, cause progressive arthritis, and/or necessitate a knee replacement. (Compl. ¶¶ 35, 37).

### C. Defendants' Alleged Roles

Plaintiff alleges all four defendants were aware of this medical history, but failed to follow the doctors' recommendations and denied him scheduled follow-up appointments, even though he had to "rely on these defendants to treat his medical needs," including "making sure he makes all of his scheduled appointments." (Compl. ¶¶ 39-40). The complaint does not allege what, if any, personal involvement each defendant had in scheduling or denying such appointments or ensuring plaintiff's attendance.

Plaintiff further alleges defendants Ulloa and Kelly repeatedly delayed his knee surgery and "conspired" to prevent him from getting surgery "knowing that having a meniscus torn . . . could cause plaintiff to have a kne[e] replacement." (Compl. ¶¶ 34, 35, 37). The complaint contains no facts in support of the conspiracy allegation between defendants Ulloa and Kelly.

### III. Procedural History

Plaintiff filed his complaint on January 21, 2015, bringing claims against all defendants for violation of (i) his Eighth Amendment rights; (ii) his Fourteenth Amendment rights; and (iii) his rights under "the Equal Protection Clause of the Eighth and Fourteenth Amendments." (Compl. ¶ 49). The Court construes the first and second claims as being for constitutionally

5

inadequate medical care. The Court construes the third claim as alleging plaintiff received inferior care because of his membership in a protected class.[2]

The complaint does not allege any specific state law claims, but asks the Court to exercise supplemental jurisdiction over any "claims that arise from the same facts and circumstance [sic] under 28 U.S.C. § 1367." (Compl. ¶ 2). Thus, the Court liberally construes the complaint as bringing additional state law claims for medical malpractice.

Defendants filed the instant motion to dismiss on May 29, 2015. (Doc. #15). On June 1, 2015, the Court ordered plaintiff to write a letter indicating whether he would rely on his initial complaint or amend it. (Doc. #20). The Court received no response. On July 2, 2015, the Court sua sponte extended plaintiff's time to oppose the instant motion, to August 3, 2015. (Doc. #26). Plaintiff filed no opposition.

## DISCUSSION

I. Legal Standards

   A. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; accord Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity

---

[2] The Eighth Amendment contains no Equal Protection Clause; therefore, the Court evaluates this claim under the Fourteenth Amendment alone.

and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

Failure to oppose a motion to dismiss "does not, by itself, require the dismissal of [plaintiff's] claims." Kucharczyk v. Westchester Cty., 95 F. Supp. 3d 529, 536 (S.D.N.Y. 2015)

7

(quoting Leach v. City of New York, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013) [3]). Rather, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000).

      B.    Constitutionally Inadequate Medical Care

Section 1983 claims for constitutionally inadequate medical care are based on violations of an inmate's Eighth Amendment rights if he is incarcerated following a conviction, and on violations of his Fourteenth Amendment rights if he is a pre-trial detainee. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The applicable legal standards are the same. Id. at 71-72.

To assert a viable claim, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both an objective and a subjective component: plaintiff must plead facts showing (i) the alleged deprivation of medical care is "sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006).

For the purposes of the objective component, a condition is sufficiently serious if it may cause "death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (quoting Hemmings v. Gorsczyk, 134 F.3d 104, 108 (2d Cir. 1998)), or if "the failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). "Factors relevant to the seriousness of a medical

---

[3]     Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Salahuddin v. Goord, 467 F.3d at 280 (quoting Chance v. Armstrong, 143 F.3d at 702).

To satisfy the subjective component, a plaintiff must allege the defendant had a mental state akin to recklessness, which "requires that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin v. Goord, 467 F.3d at 280 (citing Farmer v. Brennan, 511 U.S. 825, 836-37 (1994)). Plaintiff must allege "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. at 835. For example, "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." Johnson v. Wright, 412 F.3d at 404 (citing Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987)).

As with any Section 1983 claim, plaintiff must allege defendants' personal involvement in the claimed violation of his rights. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). To do so, plaintiff must allege defendants (i) participated directly in the alleged constitutional violation; (ii) were made aware of the wrongs and failed to remedy them; (iii) created or allowed a policy or custom under which unconstitutional practices occurred; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to his rights by failing to act on information indicating unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

II.     Equal Protection Claim

Plaintiff claims his allegedly inadequate treatment violated his rights under the Equal Protection Clause of the Fourteenth Amendment. But plaintiff alleges no facts suggesting he was treated differently based on his membership in any protected class. Accordingly, this claim is dismissed.

III.    Constitutionally Inadequate Medical Treatment Claims

It is unclear from plaintiff's complaint whether he was a pre-trial detainee or a convict during the relevant time period. Therefore, the Court is unable to determine whether plaintiff's claims for constitutionally inadequate medical treatment arise from the Eighth or the Fourteenth Amendment. But because the legal standards are the same, the Court analyzes these claims together.

   A.    Cheverko and Diaz

Plaintiff's claims based on constitutionally inadequate medical treatment fail as to defendants Cheverko and Diaz because the complaint does not plausibly allege facts indicating either was involved in any medical treatment decisions.

The complaint contains insufficient factual allegations to meet any of the theories of liability articulated in Colon v. Coughlin as to either Cheverko or Diaz.[4] Plaintiff's stray allegation that these defendants "denied plaintiff his scheduled [follow-up] appointments" is not enough by itself. (Compl. ¶¶ 39-40). If plaintiff is alleging the correction commissioner and warden of the prison directly made such decisions about his day-to-day medical treatment, this is

---

[4] The Second Circuit has noted, without deciding, that the five types of liability articulated in Colon v. Coughlin may not all have survived the Supreme Court's holding in Ashcroft v. Iqbal. See Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). Because plaintiff does not plausibly allege any of the five, however, the Court need not decide this issue.

10

implausibly pleaded; plaintiff offers no facts showing these decisions were within their responsibilities.  Nor does plaintiff plead any facts indicating these defendants failed to remedy his allegedly unconstitutional denial of treatment after being made aware of it; created a policy under which the denial took place; or were grossly negligent in their supervision of whomever was directly responsible for such decisions.

Therefore, these claims are dismissed as to defendants Cheverko and Diaz.

B.   Ulloa and Kelly

The Court finds plaintiff's complaint states a claim as to defendants Ulloa and Kelly's failure to order surgery on plaintiff's right knee, but does not state a claim for any treatment decisions related to plaintiff's back or spinal injuries.  These will be discussed in turn.

1.   Right Knee Injury

Unlike plaintiff's allegations against defendants Cheverko and Diaz, plaintiff specifically alleges Ulloa and Kelly "repeatedly kept delaying" the surgery required to repair the meniscus in plaintiff's right knee.  (Compl. ¶ 35).  Construing the complaint liberally, plaintiff plausibly alleges that these two prison officials in the jail's medical department directly denied plaintiff's necessary knee surgery.  Because plaintiff has alleged their personal involvement, the Court turns to whether the complaint satisfies the objective and subjective components of the test for constitutionally inadequate medical care.

The complaint satisfies the objective component.

Plaintiff claims the denial of his surgery caused "additional damage to [his] meniscus" that may lead to "progressive arthritis" or necessitate surgery to replace his knee.  (Compl. ¶¶ 35, 37).  For this reason, plaintiff's condition is one that "could result in further significant injury."

Harrison v. Barkley, 219 F.3d at 136 (quoting Chance v. Armstrong, 143 F.3d at 702); see, e.g., id. at 703 (a tooth cavity becomes a serious medical need "with increasingly serious implications if neglected over sufficient time").

Plaintiff's knee injury also satisfies two of the factors courts should consider in assessing seriousness. First, a "reasonable doctor" would find plaintiff's knee injuries "important and worthy of comment." Salahuddin v. Goord, 467 F.3d at 280 (quoting Chance v. Armstrong, 143 F.3d at 702). Indeed, the orthopedic surgeon who examined plaintiff's knee allegedly said plaintiff needed surgery. (Compl. ¶ 31); see also Rodriguez v. Fed. Bureau of Prisons, 2012 WL 6965109, at *9 (N.D.N.Y. Nov. 30, 2012) (knee problems were sufficiently serious where two orthopedic surgeons said surgery was necessary). Second, plaintiff claims to need a knee brace and have difficulty walking, which would "significantly affect [his] daily activities." Salahuddin v. Goord, 467 F.3d at 280 (quoting Chance v. Armstrong, 143 F.3d at 702); see also Burton v. Lynch, 664 F. Supp. 2d 349, 364-65 (S.D.N.Y. 2009) (elbow injury that prevented plaintiff from straightening and fully using his arm significantly affected daily activities); Stewart v. Fisher, 2011 WL 6153084, at *8 (S.D.N.Y. Dec. 12, 2011) (plaintiff's loss of full knee function, possibly requiring surgery, significantly affected daily activities).

The complaint also satisfies the subjective component.

Plaintiff claims defendants Ulloa and Kelly were aware of the contents of his medical records, including the orthopedic surgeon's recommendation for surgery on plaintiff's right knee, but continued to deny him surgery. The complaint does not indicate whether defendants had or gave any justification for this decision.

Taking the complaint as true, as the Court must at this early stage of the case, defendants Ulloa and Kelly "deliberately ignore[d] the medical recommendations of [plaintiff's] treating physicians," which can constitute deliberate indifference. Johnson v. Wright, 412 F.3d at 404; see Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir. 2015) (summary order) (subjective component satisfied where defendants ignored a medical evaluation indicating plaintiff needed surgery); Rodriguez v. Fed. Bureau of Prisons, 2012 WL 6965109, at *10 (subjective component satisfied where defendant denied knee surgery without apparent justification despite an MRI showing significant damage and a request to authorize surgery).

Defendants advance several arguments in support of their motion to dismiss these claims. None is persuasive.

First, defendants argue plaintiff's injuries are not sufficiently serious because "he is not a medical professional and cannot state [] with any certainty" that his right knee injury could lead to arthritis or a knee replacement. (Defs.' Br. at 10). But plaintiff's ability to support these claims is a subject for summary judgment. At this stage, plaintiff has sufficiently alleged serious future consequences as a result of the failure to surgically repair his torn meniscus.

Next, defendants point to the numerous medical appointments, tests, and treatments plaintiff mentions in his complaint. These, they claim, demonstrate both the adequacy of the treatment plaintiff received and the lack of defendants' deliberate indifference. (Defs.' Br. at 10-11).

This argument also fails. As recounted above, the pain medication and most of the tests and medical attention were to treat plaintiff's back and spinal injuries. For his knee, plaintiff was only given a cane, an MRI exam, and a recommendation for surgery that was never performed.

13

No other treatment mentioned in the complaint was directed at his knee injury. The treatment of plaintiff's back and spine does not somehow discount his claims of inadequate care for his knee.

Defendants argue next that plaintiff merely disagrees with their medical judgment and choices in treatment, and that they "are not required to follow all recommendations of outside physicians verbatim." (Defs.' Br. at 13 (citing Davis v. Reilly, 324 F. Supp. 2d 361 (E.D.N.Y. 2004)). But this is not a case in which plaintiff simply disagrees with a course of treatment—accepting the complaint as true, he received practically no treatment at all. Davis v. Reilly, cited by defendants, is distinguishable because the plaintiff in that case "was given x-rays, Cat–Scans, an injection of medicine to loosen his stiff neck and back and pain medication three times per day." 324 F. Supp. 2d at 368.

Accordingly, plaintiff plausibly states a claim for constitutionally inadequate treatment of his right knee injury against defendants Ulloa and Kelly.[5]

### 2. Back and Spine Injuries

The Court assumes, without deciding, that plaintiff plausibly alleges defendants Ulloa and Kelly's personal involvement in treatment decisions regarding plaintiff's back and spinal injuries, and that these injuries pass the objective component of the test.

Nevertheless, plaintiff's claim fails because it fails the subjective component—that is, it amounts to "mere disagreement over the proper treatment," which "does not create a constitutional claim[,] [s]o long as the treatment given is adequate." Chance v. Armstrong, 143

---

[5] The Court does not, however, construe these claims as conspiracy claims, despite plaintiff's conclusory reference to a conspiracy between defendants Ulloa and Kelly. (Compl. ¶ 37). Plaintiff alleges no facts suggesting an agreement between these defendants or anyone else to deny him medical treatment. To the extent the complaint can be construed liberally to bring any conspiracy claims, they are dismissed.

F.3d at 703.  The complaint indicates plaintiff was sent to outside facilities no fewer than six times, received various diagnostic tests, and was given multiple prescriptions for pain management from August to December 2014.  Moreover, plaintiff does not allege any particular treatment he should have received but did not, except for different or additional pain management drugs.  Because the treatment appears to have been adequate, plaintiff does not plausibly allege deliberate indifference toward his back and spinal injuries.

Accordingly, this claim is dismissed.

IV.     State Law Claims

Plaintiff's complaint asks the Court to exercise supplemental jurisdiction over any state law claims arising from the facts he alleges, pursuant to 28 U.S.C. § 1367(a), but does not specify what claims he wishes to bring.  The Court construes the complaint as bringing claims for medical malpractice.

"[T]o make out a prima facie case for medical malpractice, plaintiff must allege that (1) [defendants] owed a duty of care to the plaintiff; (2) [defendants] breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries."  Naughright v. Weiss, 857 F. Supp. 2d 462, 474 (S.D.N.Y. 2012) (applying New York law).

Reading plaintiff's complaint liberally, he states a claim for medical malpractice against defendants Ulloa and Kelly.  According to plaintiff, these defendants made repeated, conscious decisions to deny him surgery that an orthopedic surgeon said he needed.  Ulloa and Kelly plausibly owed plaintiff a duty of care because they were responsible for authorizing or providing this surgery.  Their allegedly unjustified deviation from the surgeon's recommendation

breached that duty, because they were aware of the medical necessity of surgery and did nothing about it. Their alleged decision to disallow surgery caused plaintiff's knee condition to worsen, so it was the proximate cause of plaintiff's harm.

Therefore, the Court will not dismiss these claims with respect to the denial of knee surgery.

On the other hand, plaintiff does not state a medical malpractice claim with respect to his back and spine injuries. The complaint does not allege how, if at all, defendants' treatment of these injuries caused him any additional harm; therefore, the complaint does not plausibly allege proximate cause. The Court need not decide whether the other two elements are met.

Finally, plaintiff does not state a medical malpractice claim against defendants Cheverko or Diaz. As discussed above, plaintiff has not plausibly alleged any facts suggesting either defendant was involved in the decision to deny him surgery. Therefore, the medical malpractice claim against Cheverko and Diaz must be dismissed.

## CONCLUSION

Defendants' motion to dismiss is GRANTED as to all claims against defendants Cheverko and Diaz.

As to defendants Ulloa and Kelly, the motion is (i) DENIED as to the claims for constitutionally inadequate medical treatment and medical malpractice with respect to plaintiff's right knee, and (ii) GRANTED as to all other claims.

It is not clear whether plaintiff intends to pursue this case. The Court has received no correspondence from plaintiff since March 18, 2015 (Doc. #9), even after the Court ordered plaintiff to notify the Court regarding whether he intended to file an amended complaint (Doc.

#20), and plaintiff failed to oppose the instant motion.  **Plaintiff, and counsel for defendants Ulloa and Kelly, are directed to attend a status conference on February 4, 2016, at 11:00 a.m., at the United States Courthouse, 300 Quarropas Street, Room 620, White Plains, New York 10601.  If plaintiff fails to do so, the Court may dismiss his case for failure to prosecute or to comply with a court order.  Fed. R. Civ. P. 41(b).**

The Clerk is directed to terminate defendants Kevin Cheverko (i/s/h/a "Cherverko") and Leandro Diaz from this action, and to terminate the motion.  (Doc. #15).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated: January 4, 2016
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge